IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION                    PLAINTIFF

V.                                                    CIVIL ACTION NO. 4:13-CV-92-SA-JMV

STONE PONY PIZZA, INC.                                             DEFENDANT

## MEMORANDUM OPINION

The Equal Employment Opportunity Commission (EEOC) brought this case alleging that

Stone Pony Pizza, Inc., engaged in racially discriminatory employment practices. Specifically,

the EEOC contends that Stony Pony failed to hire job applicants because of their race,

maintained a racially segregated workforce, and failed to retain records as required by Title VII.

Eleven individual Plaintiffs, all prospective or past employees of the Defendant, intervened in

this case.

Stone Pony filed a motion for summary judgment [219] to which the Intervenors and the

EEOC responded [230, 236], and Stone Pony replied [243]. The EEOC also filed a motion for

summary judgment [217], to which the Defendant responded [231].

### I.     *Factual and Procedural Background*

Opened in 2009, Stone Pony Pizza, Inc. is a restaurant in Clarksdale, Mississippi that

employs workers in the back-of-house positions of cook and dishwasher, and front-of-house

positions of server, bartender, and host, as well as delivery drivers.

Chendra Johnson-Hampton filed a charge of discrimination with the EEOC on March 17,

2011, alleging that she was denied a position as a server at Stone Pony in September of 2010

because she is black, and that white females were hired for open server positions instead.

Pursuant to Johnson-Hampton's charge, the EEOC opened an investigation. Based on the investigation, the EEOC made a reasonable cause determination that Stone Pony discriminated against Johnson-Hampton and two other black applicants by denying them the opportunity to work in server positions because of their race. The EEOC also determined that Stone Pony maintained a racially segregated workforce, and failed to retain employment applications for a period of at least one year as required by Title VII. The EEOC informed Stone Pony of its determination by letter dated June 29, 2012, and invited Stone Pony to engage in conciliation discussions. Stone Pony responded with a wholesale denial of the EEOC's findings.

Based on Stone Pony's response and denial, the EEOC reopened the inquiry. On September 26, 2012, the EEOC issued a new determination letter with the additional finding of class-wide discrimination against African Americans as a class. In October of 2012, the EEOC invited Stone Pony to engage in a face-to-face conciliation conference and issued a proposed conciliation agreement that provided specific relief for individuals as well as class-wide relief including the establishment of a claimant fund for as-yet unidentified class members. Stone Pony rejected the proposed conciliation agreement and the EEOC's offers to participate in a conciliation conference or in person negotiations by letter on October 31, 2012, and again on February 15, 2013. The EEOC filed this case on May 17, 2013.

Johnson-Hampton, Wylinda Gregory, and Youmeka Simpson were permitted to intervene in this suit on August 2, 2013 by Magistrate Judge Order [5]. Cecily Allen, Stephanie Clay, Shameika Cooper, Faith Holmes, Regina Moton, Crystal Peeler, Lashunda Ranson, and Jasmine Washington were permitted to intervene on January 8, 2014 using the same procedure [56]. All of the Intervenor Plaintiffs allege that Stone Pony failed to hire them for front-of-house positions because they are black.

Stone Pony now moves for summary judgment on all of the Plaintiff and Intervenors' claims on both procedural and substantive grounds. The EEOC requests summary judgment on four of Stone Pony's affirmative defenses.

## II.    *Standard of Review*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276

F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

III.    *Stone Pony Inc.'s Motion for Summary Judgment*

Defendant Stone Pony argues five separate issues for summary judgment in its favor. First Stone Pony challenges the EEOC's ability to sue on behalf of individuals that never filed EEOC charges. Second, Stone Pony challenges the ability of individuals that never filed EEOC charges to intervene in a case brought by the EEOC on their behalf. Third, Stone Pony argues that this case should be dismissed because the EEOC failed to conciliate in good faith. Fourth, Stone Pony argues that Plaintiffs' Section 1981 claims fail as a matter of law because the Plaintiffs have failed both to establish *prima facie* cases of discrimination, and to rebut Stone Pony's stated legitimate non-discriminatory reasons for its adverse actions against the Plaintiffs. Finally, Stone Pony argues that there is no basis for the Plaintiffs' claim that Stone Pony failed to comply with the record keeping requirements of Title VII.

The Court will first lay out a few general principles relevant in Title VII suits, and then address each of the issues raised by Stone Pony.

A.  *Title VII Suits Generally*

Title VII authorizes private actions by individual employees subjected to certain types of discrimination, and public suits by the EEOC and the Attorney General. *See* 42 U.S.C. §2000e, *et seq*. In general, plaintiffs bringing claims under Title VII are required to file a complaint with the EEOC within 180 days of the occurrence of the discriminatory or retaliatory act. 42 U.S.C. §2000e–5(e).

The filing of the charge sets in motion "an integrated, multistep enforcement procedure" that culminates in the EEOC's authority to bring a civil suit in federal court. *Occidental Life Ins.*

*Co. of California v. EEOC*, 432 U.S. 355, 359, 97 S. Ct. 2447, 53 L. Ed. 2d 402 (1977); *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 287, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002). After the employee files a charge, the EEOC must serve notice of the charge on the employer. *Occidental Life*, 432 U.S. at 359-60, 97 S. Ct. 2447; 42 U.S.C. §2000e–5. The EEOC is then required to investigate the charge and determine whether there is reasonable cause to believe that it is true. *Occidental Life*, 432 U.S. at 359-60, 97 S. Ct. 2447; 42 U.S.C. §2000e–5.

If the EEOC finds that there is reasonable cause, it "shall endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id*. If the EEOC is unable to reach an acceptable conciliation agreement, the EEOC may bring a civil suit. *Id*. When the EEOC decides to sue, the employee has no independent cause of action, although the employee may intervene in the EEOC's suit. *Waffle House*, 534 U.S. at 291, 122 S. Ct. 754; *see also* 42 U.S.C. § 2000e–5(f)(1).[1]

If the EEOC does not find reasonable cause, or does not act, it issues a right to sue letter, and the complaining party has ninety days to file a private suit. 42 U.S.C. §2000e-5(f)(1). A Title VII plaintiff is required to follow this procedure in order to exhaust their administrative remedies before filing a civil suit. *Cole v. First Warren Corp.*, No. 3:14-CV-844, 2015 WL 5943372, at *2 (S.D. Miss. Oct. 13, 2015) (citing *EEOC v. Boh Bros. Const. Co., LLC*, 731 F.3d 444, 466 (5th Cir. 2013)); *see also Choctaw Glove & Safety Co.*, 459 F.3d 595, 598 (5th Cir. 2006); *Wheeler v. Am. Home Prods., Corp.*, 582 F.2d 891, 897 (5th Cir. 1977). A "carefully limited exception" to this exhaustion requirement, the "single filing rule," allows parties to "opt-in to a suit filed by any similarly situated plaintiff [without filing their own EEOC charges] under certain

---

[1] Although not relevant in the instant case, the EEOC has the statutory right to intervene in a case brought by an individual plaintiff pursuant to a right to sue letter. *See* 42 U.S.C. § 2000e–5(f)(1).

conditions." *Id.* (quoting *Bettcher v. Brown Sch., Inc.*, 262 F.3d 492, 493-94 (5th Cir. 2001) (citing *Anson v. Univ. Texas Health Science Ctr.*, 962 F.2d 539, 540 (5th Cir. 1992))).

Federal courts, including the Fifth Circuit, have expressly adopted the single filing rule in suits brought by individuals. *See Choctaw Glove*, 459 F.3d at 598. The vicarious exhaustion of the single filing rule is available in some situations because, as the Fifth Circuit has recognized, "literal compliance does not always effectuate the requirement's purpose of promoting informal settlements." *Id.* (citing *Crawford v. United States Steel Corp., et al.*, 660 F.2d 663, 666 (5th Cir. 1981) (explaining that the purpose of the EEOC charge requirement is to ensure that the settlement of grievances be first attempted through the office of the EEOC)).

With these general principles in mind, the Court will now address each of the issues on which Stone Pony seeks summary judgment.

B. *Scope of EEOC Suit*

The first summary judgment issue raised by Stone Pony relates to the EEOC's ability to sue on behalf of individuals that never filed EEOC charges. Stone Pony argues that the EEOC cannot sue on their behalf because those persons failed to exhaust their administrative remedies.

The Court notes that Title VII and the relevant United States Supreme Court caselaw have acknowledged and held that the EEOC scope of enforcement is broader than an individual's claim. The EEOC has the independent statutory responsibility to investigate and conciliate claims, and ultimately, the authority to bring a civil action in federal court. 42 U.S.C. § 2000e-5; *Waffle House*, 534 U.S. at 288, 122 S. Ct. 754; *Occidental Life*, 432 U.S. at 359, 97 S. Ct. 2447. "As a complaining party, the EEOC may bring suit to enjoin an employer from engaging in unlawful employment practices, and to pursue reinstatement, backpay, and compensatory or punitive damages." *Waffle House*, 534 U.S. at 287, 122 S. Ct. 754. Further, the EEOC has the

statutory authority to proceed solely in its own name, may independently seek relief for a group

of aggrieved individuals, and is not required to comply with the class certification and other

requirements of Federal Rule of Civil Procedure 23. *Id.* at 288; *Gen. Tel. Co. of Nw. v. EEOC*,

446 U.S. 318, 330, 100 S. Ct. 1698, 64 L. Ed. 2d 319 (1980). The United States Supreme Court

has also noted that the statute of limitations in EEOC enforcement actions is broader than the

statute of limitations governing individual claims. *Waffle House*, 534 U.S. at 287, 122 S. Ct. 754

(citing *Occidental Life*, 432 U.S. at 368, 97 S. Ct. 2447).

Although there are often public policy considerations in discrimination cases brought by

individuals, there is a broader public interest at work in suits brought by the EEOC, because the

EEOC acts, not only "for the benefit of specific individuals, it acts also to vindicate the public

interest in preventing employment discrimination." *General Telephone*, 446 U.S. at 326, 100 S.

Ct. 1698. Therefore, the scope of the EEOC's interest, especially in cases involving class-wide

discrimination, is broader than that of any individual plaintiff. *Id.* To this end, Congress and the

United States Supreme Court have expanded the EEOC's ability to sue, as well as the types of

relief available, and loosened procedural restrictions in EEOC suits several times.[2] In the context

of the instant case, the EEOC's interest is broader than the individuals' and the policy and

procedural considerations relevant to the EEOC's ability to sue are distinct from the

considerations relevant to the individuals' right to intervene.

If a private party was permitted to sue on claims not brought in their administrative

charge, the EEOC's "informal procedures for resolving discrimination charges, see 42 U.S.C. §

2000e-5(b) [. . .] would be by-passed, in derogation of the statutory scheme." *E.E.O.C. v.*

---

[2] *See e.g.General Telephone*, 446 U.S. at 326, 100 S. Ct. 1698 (finding that in 1972, Congress amended Title VII to authorize the EEOC to bring its own enforcement actions, and that suits brought be EEOC were not subject to class certification and other requirements of Federal Rule of Civil Procedure 23); *Waffle House.*, 534 U.S. at 287, 122 S. Ct. 754 (citing 42 U.S.C. § 1981a(a)(1) (1994 ed.) (finding that in 1991, Congress again amended Title VII to allow the recovery of compensatory and punitive damages by a complaining party).

*Caterpillar, Inc.*, 409 F.3d 831, 832-33 (7th Cir. 2005) (citing *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 375-76, 99 S .Ct. 2345, 60 L. Ed. 2d 957 (1979); *Cable v. Ivy Tech State College,* 200 F.3d 467, 476-77 (7th Cir. 1999); *Anjelino v. New York Times Co.,* 200 F.3d 73, 93 (3d Cir. 1999)). Because of the EEOC's own mandatory investigation and conciliation requirements, "[t]hat is not an issue when the EEOC itself is the plaintiff, which is why a suit by the EEOC is not confined 'to claims typified by those of the charging party[.]'" *Caterpillar*, 409 F.3d at 832-33 (quoting *General Telephone*, 446 U.S. at 331, 100 S. Ct. 1698); *see also Waffle House*, 534 U.S. at 291; *Occidental Life*, 432 U.S at 368, 97 S.Ct. 2447. The Fifth Circuit interprets "what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Pacheco v. Mineta*, 448 F.3d 783, 788-89 (5th Cir. 2006). "Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable." *Id.* (citing *General Telephone*, 446 U.S. at 331, 100 S. Ct. 1698). "The charge incites the investigation, but if the investigation turns up additional violations, the Commission can add them to its suit." *Id.*

In the instant case, although the EEOC's involvement was triggered by an individual's charge, the scope of the investigation uncovered various other issues on which the EEOC made reasonable cause determinations. *See Occidental Life*, 432 U.S. at 359-60, 97 S. Ct. 2447; 42 U.S.C. §2000e–5. The EEOC followed its own "multistep enforcement procedure" that culminated in their authority to bring a civil suit in federal court.[3] *Occidental Life*, 432 U.S. at 359, 97 S. Ct. 2447; *Waffle House*, 534 U.S. at 287, 122 S. Ct. 754.

---

[3] Stone Pony raises a separate challenge to the conciliation requirement that will be fully discussed below.

Because of the statutory and judicially recognized breadth of the EEOC's authority to enforce its own statute, the Court finds that the EEOC has the authority to sue on behalf of the individual plaintiffs in this case regardless of whether they filed individual charges with the EEOC. Stone Pony's motion for summary judgment on this issue is denied.

C. *Intervention*

Next, Stone Pony challenges the ability of individuals that never filed EEOC charges to intervene in a case brought by the EEOC on their behalf. Stone Pony argues that the individual Plaintiffs should not be permitted to intervene because they failed to exhaust their administrative remedies. Stone Pony further argues that the individual Plaintiffs failed to meet the requirements of the single filing rule, and therefore cannot invoke it as an exception to Title VII's exhaustion requirement.[4]

Due to a lack of appellate court precedent, and different rationales applied by district courts, the Court finds that whether individual exhaustion is required for Plaintiffs to intervene in suits brought by the EEOC on their behalf is an open question. Even less clear is whether the single filing rule applies in this context.

a. *Intervention: Policy and Procedure*

After the EEOC files a suit on behalf of an individual, the individual's right to file his or her own suit is cut off, and the individual is limited to intervention in the EEOC's suit. *Waffle House*, 534 U.S.at 291, 122 S. Ct. 754; 42 U.S.C. § 2000e–5(f)(1). The Fifth Circuit has recognized two important purposes of intervention that are relevant here, "to foster economy of judicial administration, and to protect non-parties from having their interests adversely affected by litigation conducted without their participation." *Stallworth v. Monsanto Co.*, 558 F.2d 257,

---

[4] The "single filing rule," allows parties to "opt-in to a suit filed by any similarly situated plaintiff [without filing their own EEOC charges] under certain conditions." *Cole*, 2015 WL 5943372, at *2 (quoting *Bettcher*, 262 F.3d at 493-94 (citing *Anson*, 962 F.2d at 540).

265 (5th Cir. 1977). In the context of the instant case, the individual Plaintiffs have an interest in participating in the EEOC's case, the protection of their personal interests, and the limitation of being precluded from suing on their own. *Waffle House*, 534 U.S. at 291, 122 S. Ct. 754; 42 U.S.C. § 2000e–5(f)(1); *Stallworth*, 558 F.2d at 265.

Based on the available precedent, there are two potential paths to intervention for the Plaintiffs, and both reach the same result. First, as "persons aggrieved" under 42 U.S.C. 2000e-5(f)(1) they may have the unconditional statutory right to intervene pursuant to Federal Rule of Civil Procedure 24(a). Alternatively, they may permissively intervene under Federal Rule of Civil Procedure 24(b) through an application of the single filing rule. Due to the lack of appellate precedent on this issue, the Court will analyze the specifics of the Plaintiffs' cases under both paths to intervention.

### b. Intervention of Right

In the instant case, Intervenor Johnson-Hampton filed a charge with the EEOC, the EEOC notified Stone Pony of the Charge, conducted an investigation, notified Stone Pony of its findings, and attempted conciliation. After Stone Pony declined to participate in conciliation negotiations, the EEOC filed this civil suit, and Johnson-Hampton intervened. Although the other individual Plaintiffs never filed charges with the EEOC, they each allege essentially the same claim, that Stone Pony refused to consider and hire them for front-of-house positions because of their race. Each of the Intervenors claims arose at different times, some prior to Johnson-Hampton's, and some after.

In conjunction with Federal Rule of Civil Procedure 24, 42 U.S.C. §2000e-5(f)(1) confers an unconditional right to intervene in suits brought by the EEOC. It provides in pertinent part: "The person or persons aggrieved shall have the right to intervene in a civil action brought by the

Commission . . . ." Clearly, Johnson-Hampton, as the filer of the original discrimination charge is a "person aggrieved" within the meaning of the statute, and as such has an unconditional right to intervene in this case. FED. R. CIV. P. 24(a); 42 U.S.C. §2000e-5(f)(1). Stone Pony does not challenge Johnson-Hampton's right to intervene in this case. However, Stone Pony contends that because the other Intervenors never filed charges with the EEOC, they are not "persons aggrieved" within the meaning of the statute, and therefore do not have a statutory right to intervene in this case.

Surprisingly, few courts have directly addressed the question of who qualifies as a "person aggrieved" within the meaning of 42 U.S.C. §2000e-5(f)(1), and fewer still have addressed whether an employee that did not file an EEOC charge has the unconditional right to intervene in a suit brought by the EEOC instead of a private individual. Some courts have held that although the single filing rule does not directly apply in suits brought by the EEOC, the rationale behind the rule is applicable in analyzing "persons aggrieved". In particular, some courts have focused on the first prong of the single filing rule and applied its logic in the context of individual intervention in EEOC cases.

The three mandatory conditions articulated by the Fifth Circuit that "must be satisfied before a plaintiff may invoke the single filing rule" are as follows:

> First, the plaintiff must be similarly situated to the person who actually filed the EEOC charge. Second, the charge must have provided some notice of the collective or class-wide nature of the charge. Finally, a prerequisite - implicit to be sure - for piggybacking under the single filing rule is the requirement that the individual who filed the EEOC charge must actually file a suit that the piggybacking plaintiff may join.

*Id.* (quoting *Bettcher*, 262 F.3d at 494).[5]

_____
[5] Because the scope of an EEOC suit may be larger than an individual suit, and when the EEOC files a suit, an individual's right to sue is cut off, the application of the second and third prongs of the single filing rule in EEOC is

In *EEOC v Albertson's LLC*, the district court for the District of Colorado rejected the Defendant's argument that the original filer of the EEOC charge was the only aggrieved person in an EEOC case. *See E.E.O.C. v. Albertson's LLC*, 579 F. Supp. 2d 1342, 1346 (D. Colo. 2008). Instead, the *Alberton's* court focused on the "similarly situated" prong of the single filing rule and held that class claimants that did not file EEOC charges but had "nearly identical claims" were "persons aggrieved" under 42 U.S.C. §2000e-5(f)(1) and had the unconditional right to intervene in a suit brought by the EEOC. *See Albertson's*, 579 F. Supp. 2d at 1346; c*ompare EEOC v. Outback Steak House of Florida, Inc.*, 245 F.R.D. 657, 659 (D. Colo. 2007) (finding that district courts in Iowa, Pennsylvania, Illinois, and New York have all found that a "person aggrieved" includes "a person who has a 'nearly identical' claim to a charging party even if the 'nearly identical' claimant has not previously filed a charge with the EEOC"), *with EEOC v. Fry's Electronics, Inc.*, 770 F. Supp. 2d 1168, 1171 (W.D. Wash. 2011) (holding that Title VII's right to intervene granted to "persons aggrieved" must be read in concert with Title VII's exhaustion requirement, and applying single filing rule).

Due to the lack of appellate court precedent on this issue, this Court declines to expressly hold that class claimants that did not file their own EEOC charge are "persons aggrieved" under the meaning of 42 U.S.C. §2000e-5(f)(1) with an unconditional statutory right to intervene. However, bearing in mind the overriding policy concerns outlined above, this Court finds persuasive the common sense approach of allowing individual plaintiffs to intervene in a suit brought on their behalf, and the extension of the *rationale* behind the first prong of the single filing rule by other district courts.

    *c. Permissive Intervention*

---

not practicable. *See General Telephone*, 446 U.S. at 331, 100 S. Ct. 1698); *Waffle House*, 534 U.S. at 291; *Occidental Life*, 432 U.S at 368, 97 S. Ct. 2447; 42 U.S.C. § 2000e–5(f)(1).

Even if the Court did not find the extension of the policy behind the single filing rule in this case persuasive, Rule 24 also provides for permissive intervention for potential plaintiffs whose claims share common questions of law or fact with the main action. FED. R. CIV. P. 24(b)(1)(B). In the instant case, the EEOC's complaint seeks relief for Simpson and Gregory by name as well as relief for a class of African American job applicants. Further, because of the nearly identical nature of each individual Plaintiff's claim, the claims share common questions of law.

Stone Pony predicates its arguments against permissive intervention on the assumption that the single filing rule applies in cases brought by the EEOC even without citing precedential EEOC cases. Stone Pony argues both that the Intervenors are not similarly situated to Johnson-Hampton, and that Johnson-Hampton's original charge did not put Stone Pony on notice of the class-wide nature of the claims ultimately brought. Stone Pony relies primarily on cases brought by individual plaintiffs to support its single filing rule arguments.

Even if the single filing rule were to apply in this context, the policy behind the rule is that "[i]t would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC." *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968). "As long as the EEOC and the company are aware of the nature and scope of the allegations, the purposes behind the filing requirement are satisfied and no injustice or contravention of congressional intent occurs by allowing piggybacking." *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1223 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003). *See also Bettcher*, 262 F.3d at 495 n. 3 (stating "[t]he single filing rule has . . . only been read to eliminate

the need to file an EEOC charge when the purposes behind the charge-filing requirement have been met").

The Fifth Circuit interprets "what is properly embraced in review of a Title VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination. *Id*. In this case, the scope of the EEOC's investigation, determination letters, and attempts at conciliation alerted Stone Pony of the precise parameters of the claims and allegations against them. The EEOC's September 2012 (pre-conciliation) determination letter clearly states, "Stone Pony violated Title VII when it failed to hire Charging Party and Blacks as a class." The letter goes on to state explicit claims against Stone Pony for maintaining a segregated workforce and for failing to maintain adequate employment records. Stone Pony's repeated, wholesale denials of the EEOC's findings demonstrate both that Stone Pony had actual notice of the allegations, and that the purpose of the EEOC's involvement in the case up to that point, "to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion" was fulfilled. 42 U.S.C. §2000e-5(b); *Choctaw Glove*, 459 F.3d at 598.

Similarly, Stone Pony's argument that the Intervenors are not similarly situated with Johnson-Hampton is not well taken given the nearly identical nature of the individuals' claims.

Even if the single filing rule were to apply in this context, the Court finds that the individual Plaintiffs in this case have principally complied with its mandatory conditions and should be permitted to intervene in this case brought by the EEOC on their behalf.

For these reasons, Stone Pony's motion for summary judgment on the issue of intervention by the individual Plaintiffs is denied.

*d. Temporal Restrictions*

Although the Court finds above that exhaustion is not a bar to the individual Plaintiffs ability to intervene in the EEOC's suit, the Court rejects the EEOC's contention that no temporal restrictions apply. Johnson-Hampton's charge and the investigation reasonably expected to grow from it, should have placed Stone Pony on notice that it may also face future claims and impending class action, but could not possibly have put Stone Pony on notice that it would face claims that had long since expired. *Custom Companies*, No. 02 C 3768, 2003 WL 22455510, at *2 (N.D. Ill. Oct. 28, 2003). *See Lumpkin v. Coca-Cola Bottling Co. United*, 216 F.R.D. 380, 385, No. 3:01-CV-662 (S.D. Miss. March 31, 2003) (rejecting the same argument that the Intervenors assert in this case, that the Defendant's racially discriminatory policy was the equivalent of a continuing violation) (citing *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1221–1222, *reh'g en banc denied,* (11th Cir. 2001) (stating that "[w]e can find no authority ... for allowing one plaintiff to revive a stale claim simply because the allegedly discriminatory policy still exists and is being enforced against others."))

Johnson-Hampton's claim arose on September 27, 2010 and she filed her charge with the EEOC on March 17, 2011. Jasmine Washington, Lashunda Ranson, and Regina Moton's allegations arose prior to that of the original filer. Washington's claim arose on October 5, 2009, Ranson's on October 10, 2009, and Moton's on October 26, 2009, all more than eleven months before Johnson-Hampton's. The 180-day filing period for Washington, Ranson, and Moton's claims expired before Johnson-Hampton's, the claim that ultimately resulted in this suit, arose. 42 U.S.C. §2000e–5(e). For this reason, and because Johnson-Hampton's charge could not possibly have put Stone Pony on notice of their claims, Washington, Ranson, and Moton should

not have been permitted to intervene in this EEOC action and will be removed as Intervenor Plaintiffs. *Id*.

The removal of these three Intervenors in no way affects the EEOC's independent ability to pursue claims in its own name. As to the composition of the class on whose behalf the EEOC seeks relief, there is either conflicting or insufficient evidence in the record at this time, preventing the Court from making a definitive determination on precisely who falls within the class of people on whose behalf the EEOC seeks relief. Should this case proceed to trial the Court will hear evidence and argument relevant to that issue at that time.

### D. Conciliation

Stone Pony next argues that summary judgment in their favor is warranted because the EEOC failed to conciliate in good faith as required by Title VII.

Title VII imposes a duty on the EEOC to attempt conciliation of a discrimination charge prior to filing a lawsuit. *Mach Mining, LLC v. EEOC*, 135 S. Ct. 1645, 1651, 191 L. Ed. 2d 607 (2015). That obligation is a key component of the statutory scheme, and is mandatory. *Id*. 42 U.S.C. §2000e-5(b) provides that the Commission "shall endeavor to eliminate [an] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." To meet the statutory condition, the EEOC must "tell the employer about the claim—essentially, what practice has harmed which person or class—and must provide the employer with an opportunity to discuss the matter in an effort to achieve voluntary compliance. If the Commission does not take those specified actions, it has not satisfied Title VII's requirement to attempt conciliation." *Mach Mining*, 135 S. Ct. at 1652, 191 L. Ed. 2d 607 (citing *Heckler v. Chaney*, 470 U.S. 821, 829, 105 S. Ct. 1649, 84 L. Ed. 2d 714 (1985)).

In this case, the EEOC followed the conciliation requirements and even reopened its investigation based on Stone Pony's rebuttal of its findings. Stone Pony never engaged in conciliation discussions and its only responses to the EEOC's attempts at conciliation were wholesale denials of the allegations and outright rejections of offers to engage in negotiation and discussion. Stone Pony's primary argument in support of its contention that the EEOC failed to conciliate is that it denies the allegations. Based on the above standard, the Court finds that Stone Pony has not articulated any reasonable basis for its argument that the EEOC failed to conciliate in good faith, and its motion for summary judgment on this issue is denied.

*E.  Section 1981 Claims*

Stone Pony additionally contends that summary judgment is necessary as to the Plaintiffs' §1981 claims because the Plaintiffs cannot sustain their burdens of proof on several essential elements of their claims.

To succeed on a claim for intentional discrimination under Title VII, Plaintiff must first prove a *prima facie* case of discrimination either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* (citing *Mooney*, 54 F.3d at 1217).

Absent direct evidence, to establish a *prima facie* case of discrimination under Title VII, a plaintiff is required to show: (i) that she belongs to a racial minority; (ii) that she applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite her qualifications, she was rejected; and (iv) that, after her rejection, the position remained open and

the employer continued to seek applicants from persons of complainant's qualifications. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817.

If a plaintiff establishes a presumption of discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

a. *Prima Facie Cases*

Resolving factual controversies in favor of the non-movants, the Court finds that each of the individual Plaintiffs in this case have established *prima facie* cases of discrimination because they are African American, they applied for front of house positions, they were not hired for those positions, and instead, white persons were hired. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817; *Little*, 37 F.3d at 1075. Although Stone Pony argues that the Plaintiffs are unable to establish *prima facie* cases, it fails to bring forth specific evidence or arguments in support.

The EEOC also bears the burden of establishing a *prima facie* case on its claim that the Defendant maintained a racially segregated workforce. The EEOC alleges that Stone Pony refused to hire African Americans for the front of house positions of server, hostess, and bartender. The Plaintiffs may establish a *prima facie* case "by the use of statistics if a 'gross' disparity in the treatment of workers based on race is shown." *Anderson v. Douglas & Lomason Co.*, 26 F.3d 1277, 1285 (5th Cir. 1994) (quoting *Carroll v. Sears, Roebuck & Co.*, 708 F.2d 183, 190 (5th Cir. 1983); *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 336, 97 S. Ct. 1843, 1855, 52 L. Ed. 2d 396 (1977)). The Supreme Court has cautioned however, "statistics are not irrefutable; they come in infinite variety and, like any other kind of evidence, they may be rebutted. In short, their usefulness depends on all of the surrounding facts and circumstances." *Anderson*, 26 F.3d at 1285 (citing *Teamsters,* 431 U.S. at 340, 97 S. Ct. 1843). If statistical evidence is insufficient to establish discriminatory intent, the plaintiffs may bolster their case by introducing historical, individual, or circumstantial evidence. *Id*. (citing *Bernard v. Gulf Oil Corp.,* 841 F.2d 547, 568 (5th Cir. 1988)).

In the instant case, the EEOC has brought forth statistical evidence of gross disparity in the treatment of workers based on race, and bolstered its case through individual and circumstantial evidence. In support of its argument, the EEOC cites to a chart provided to the EEOC by Stone Pony of all employees hired since Stone Pony opened in September of 2009 through March of 2012.[6] In this time period, Stone Pony hired a total of sixty-five employees, fifty-two for the positions of server, bartender, and hostess. All of the fifty-two employees hired for front of house positions were white.

   b.  *Legitimate Non-Discriminatory Reasons*

---

[6] The chart includes the name of each employee, his or her race, position, date of application, full or part time status, and the dates of hire and termination.

Stone Pony articulates several reasons for its employment practices, and for not hiring specific individuals. First, Stone Pony claims that its initial workforce was comprised primarily of friends and family members, and that after opening Stone Pony used word-of-mouth to fill vacancies. Stone Pony also claims that it hired African Americans for front of house positions. In support of this reason, Stone Pony cites to specific sections of the Terry Lewis, Marcus Delugach, Matthew Bass, and Matthew Joseph depositions, but fails to include or cite to specific dates and race information.

Finally, Stone Pony claims that Johnson-Hampton was not hired because she was not available to work in the time slot Stone Pony needed. This claim is contested by Johnson-Hampton and by other evidence in the record demonstrating that Stone Pony hired a number of part-time servers around the same time that Johnson-Hampton applied for different shifts.

Because an employer's burden to articulate a legitimate non-discriminatory reason for its actions is one of production only, and "can involve no credibility assessment," the Court finds that Stone Pony has articulated a legitimate non-discriminatory reason for its actions, and the burden therefore shifts back to the Plaintiff. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's*, 509 U.S. at 509, 113 S. Ct. 2742).

    *c. Pretext and Mixed Motive*

In rebuttal of Stone Pony's given legitimate non-discriminatory reasons, the Plaintiffs' argue that Stone Pony did not have objective qualifications for its positions, and instead relied on purely subjective requirements often not related to the job requirements in its hiring process. The record supports this argument. According to Stone Pony management, the qualifications for server were almost completely subjective, or based on physical appearance. Stone Pony management also indicated that prior experience was not beneficial. According to the deposition

of Stone Pony manager Matthew Joseph, the only objective criteria that Stone Pony had for the Hostess positon was having a "heartbeat". The Plaintiffs also allege, and the record demonstrates, that African American applicants were subjected to application criteria far outside the realm of job-related qualifications. In one case, Stone Pony management told an applicant for a front of house position that if he wanted to be considered, he needed to write a 300-word essay about a superhero pediatrician and to make sure to include something about a squirrel in a tree.

"The mere fact that an employer uses subjective criteria is not . . . sufficient evidence of pretext." *Cook v. Miss. Dep't of Human Servs.*, 108 F. App'x 852, 861 (5th Cir. 2004) *Manning v. Chevron Chem. Co.,* 332 F.3d 874, 882 (5th Cir. 2003); *see also Page v. U.S. Indus., Inc.,* 726 F.2d 1038, 1046 (5th Cir. 1984). But, "[a]n employer's reliance on wholly subjective criteria to make employment decisions provides a ready mechanism for racial discrimination. *Id.* (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681 (5th Cir. 2001)); *Carroll*, 708 F.2d at 192 (holding predominately subjective promotional practices warrant strict scrutiny by the courts).

Plaintiffs further allege that Stone Pony management immediately threw applications for front of house positions from black applicants into the trash, and in some cases wrote the word "kitchen" in bold letters across the top of applications for front of house positions by black applicants.

In this case, the Plaintiffs have presented strong prima facie cases of discrimination. The reasons given by Stone Pony for its employment practices are overcome by the lack of objective hiring criteria, statistical evidence, and other evidence of discrimination presented by the Plaintiffs. The Court finds that genuine issues of material fact exist in this case. Based on the record, a reasonable jury could conclude that Stone Pony's stated reasons for its employment practices are pretextual, and that race was a motivating factor in Stone Pony's employment

practices. Furthermore, Stone Pony has failed to demonstrate that the Plaintiffs cannot prove any essential element of their claims. For these reasons Stone Pony's motion for summary judgment on Plaintiffs' §1981 claims is denied.

### F. Record Keeping Violation

Finally, Stone Pony contends that there is no basis for the Plaintiffs' claim that Stone Pony failed to comply with the record keeping requirements of Title VII, and seeks summary judgment in their favor on this issue.

Pursuant to 42 U.S.C. § 2000e–8(c), "[e]very employer, employment agency, and labor organization" must "make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed," and "preserve such records for such periods . . . as the [EEOC] shall prescribe by regulation." The relevant regulation provides that employers shall preserve all personnel records for one year and shall preserve all records relevant to litigation stemming from a charge of discrimination until the litigation is terminated. 29 C.F.R. §1602.14.

In the instant case, the EEOC alleges that Stone Pony failed to maintain employment applications, failed to have a policy for retaining records, and lost or purposefully discarded applications. The EEOC cites to several examples where Stone Pony was unable to produce applications that potential employees allege were submitted, examples of applications being lost and specific instances where Stone Pony management allegedly threw applications from black applicants into the trash immediately after they were submitted. Stone Pony counters that it maintains employment records indefinitely, and that misplacing a few records over a three-year period does not constitute a record-keeping violation.

The Court notes, "a record-keeping violation may occur whether the records are purposely destroyed or merely lost." *EEOC v. Bass Pro Outdoor World, LLC*, 884 F. Supp. 2d 499, 522 (S.D. Tex. 2012) *on reconsideration,* 35 F. Supp. 3d 836 (S.D. Tex. 2014) (citing *EEOC v. T.R. Orr, Inc.*, No. CV 04–2003, 2007 WL 505293, at \*4 (D. Ariz. Feb. 14, 2007)).

The Court finds that genuine issues of material fact exist as to whether Stone Pony failed to maintain employment records as required by Title VII. As such, summary judgment on this issue is denied.

IV.    *EEOC Motion for Summary Judgment*

The EEOC also requests summary judgment on four of the affirmative defenses asserted by Stone Pony in its Answer [12]. The relevant affirmative defenses are as follows.

> (1) First Affirmative Defense - Plaintiff's Complaint fails, in whole or in part, to state claims against Defendant upon which relief can be granted.
>
> (2) Sixteenth Affirmative Defense - Plaintiff's claims are barred in whole or in part because the claims in Plaintiff's Complaint cannot be tried as pled without violating Defendant's due process rights and rights under the Seventh Amendment to the United States Constitution.
>
> (3) Seventeenth Affirmative Defense - Plaintiff's claims for damages and/or other relief on behalf of allegedly injured individuals are barred, in whole or in part, to the extent those individuals did not mitigate their damages in a timely manner or with diligence following the decision not to hire them or following the adverse employment action, and their damages, if any, should be barred or reduced accordingly.
>
> (4) Twentieth Affirmative Defense - Plaintiff's claims for punitive damages violate Defendant's constitutional protection from, including without limitation, excessive fines, cruel and unusual punishment, denial of due process and denial of equal protection of the law.

A. *Failure to State a Claim*

The Defendant in this case never raised a challenge to the pleadings by motion under Federal Rule of Civil Procedure 12(b)(6). *See also* L.U.CIV.R. 7(b)(2)(a) (stating that this Court does "not recognize a motion included in the body of the answer, but only those raised by a separate filing"). In an unusual turn of events, the EEOC has now raised the issue of the sufficiency of its own pleadings by way of its motion for summary judgment. The Court also notes that both parties have presented materials outside the pleadings which triggers the conversion of a Rule 12(b)(6) motion into one for summary judgment. *See* FED. R. CIV. P. 12(d). As cross-motions for summary judgment are now pending before this Court, all the allegations, facts, claims, and defenses presented in this case have been or will be addressed more comprehensively either under the summary judgment standard, or in the alternative, at trial.

### B.  Due Process and Seventh Amendment

In its motion, the EEOC asserts that this case can be tried without violating the Defendant's constitutional right to due process. The Defendant did not respond to this assertion, or offer any arguments to the contrary in its response. Therefore, the Court finds the EEOC's argument well taken.

The Seventh Amendment codifies the right to trial by jury in certain civil cases. *See* U.S. CONST. amend. VII. This case is currently set for a jury trial. Accordingly, the Defendant's right to trial by jury has been adequately preserved. Should this case proceed to trial, the parties will have ample opportunity to move for bifurcation or other procedural relief depending on the nature of the issues before the Court at that time.

### C.  Damages

Although the failure to mitigate damages is an affirmative defense, "a plaintiff suing under Title VII has a duty to mitigate her damages by using reasonable diligence to obtain

substantially equivalent employment." *Buckingham v. Booz Allen Hamilton, Inc.*, 64 F. Supp. 3d 981, 984 (S.D. Tex. 2014) (citing *Migis v. Pearle Vision Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998)). However, the employer has the burden of proving a failure to mitigate. *Id.* (citing *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990)). At this stage of the litigation, a ruling on damages is premature. Should this case proceed to trial, the parties will have the opportunity to present arguments as to specific damages, mitigation, punitive damages, bifurcation, and other relevant issues.

The EEOC's motion for summary judgment is therefore granted in part and denied in part. The EEOC's motion for summary judgment as to the Defendant's sixteenth affirmative defense is granted. The EEOC's motion for summary judgment as to the Defendant's first, seventeenth, and twentieth affirmative defense is denied.

*Conclusion*

For the reasons fully articulated above the Court finds as follows:

Stone Pony's motion for summary judgment is GRANTED in part, and DENIED in part. Intervenors Washington, Ranson, and Moton will be DISMISSED as Intervenor Plaintiffs. Stone Pony's motion for summary judgment is DENIED on all other issues.

The EEOC's motion for summary judgment is GRANTED in part, and DENIED in part. The EEOC's motion for summary judgment as to the Defendant's sixteenth affirmative defense is GRANTED. The EEOC's motion for summary judgment as to the Defendant's first, seventeenth, and twentieth affirmative defense is DENIED.

**SO ORDERED on this the 28th day of March, 2016.**


    __/s/   Sharion Aycock_____
    **UNITED STATES DISTRICT JUDGE**

25